## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE WESTERN DISTRICT OF
## TEXAS WACO DIVISION

| | |
|---|---|
| In re:<br><br>Donald Vincent Keith and Jocqualine Susan Keith,<br><br>      Debtors. | Bankruptcy Case No. 21-60559-MMP<br><br>Chapter 7 |
| KAPITUS SERVICING, INC., AS SERVICING AGENT FOR KAPITUS LLC<br>      Plaintiff,<br>vs.<br><br>DONALD VINCENT KEITH,<br><br>      Defendant. | Adversary No. 22-06003 |

### DEFENDANT DONALD VINCENT KEITH'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE MICHAEL PARKER, U.S. BANKRUPTCY JUDGE FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION:

COMES NOW DONALD VINCENT KEITH, Defendant herein, and pursuant to Federal Rule of Civil Procedure 56, files this Motion for Summary Judgment.

### I.    Introduction & Background Facts[1]

Fundamentally, this is a case where the Plaintiff elected (with no knowledge of or care to actually learn the true facts) to "**infer**" that Defendant committed fraud, filing suit with no investigation of the actual underlying facts.[2] Even though it claimed fraud as early as March 2022,

---

[1] Deposition testimony is cited in the following format: [PAGE NUMBER : LINE NUMBER].

[2] Exhibit A at 123:10-16 (**"Because as stated before several times, when you look at the circumstances under which this happened it is not unreasonable to infer that he committed all of those acts. So, you can present a whole bunch of new stuff here now that came out discovery, was not available when the lawsuit was started."**)(emphasis added).

Kapitus only learned of the core underlying facts on July 6, 2023 during the corporate representative deposition – that Defendant used the money obtained to immediately pay unsecured creditors who were suppliers of building materials, only to have the largest of those vendors take $50,000 and immediately turn around and cease all sales to Defendant and then notify the interim lender for homes under construction that it was asserting a lien - thus cutting off Defendant's access to all loan proceeds to complete the homes.[3] Inference and speculation from incomplete facts is not evidence of fraud.

Defendant is Donald Vincent Keith ("Keith"), who was owner and personal guarantor for Coyote Design and Build LLC ("Coyote"). Though Plaintiff clings to its "this is not a loan" narrative in order to justify a usurious transaction (Kapitus funded $80,000 but claims to be owed $113,600.00 with $616.00 owed daily),[4] Plaintiff's own internal documents refer to the transaction as a loan – calling Kapitus the "Lender" and listing the "Loan Amount" as "80K."[5]

Keith was a homebuilder and managing member of the business Coyote and obtained a loan of from Kapitus to pay existing unsecured creditors that were vendors for his business.[6] One of those unsecured creditors was Foxworth-Galbraith Lumber Company ("Foxworth"). Foxworth was paid $50,000 from the account where the loan proceeds were deposited.[7] Foxworth sells lumber and other building supplies, including to Coyote.[8] Keith had done business with Foxworth for approximately fifteen (15) years at the time of the loan from Kapitus.[9] In that time, Keith had never received a

---

[3] *Id.*; Exhibit A at 134: 23 to 135:2 ("Q. And the only basis for [claiming he's guilty of fraud] is he stopped paying real quick, checked out his business relatively soon, and filed bankruptcy couple months later. That's you're basis for is all, right? **A. That's how I inferred it.**"). He admitted that he did not even know what Keith did with the money until he saw the checks during the deposition. Exhibit A at 120-122. When asked whether he saw the check, he responded "I'm seeing it now." *Id.* at 120:9-14.
[4] Exhibit C (KAP000002).
[5] Exhibit C (KAP000186). Note that only $$77,600.00 was actually funded to Coyote.
[6] Exhibit A at 67:11-14.
[7] Exhibit B.
[8] *Id.*
[9] *Id.*

delinquency notice or written demand from Foxworth and had never had Foxworth consider him in arrears; Keith confirms that in the real world of transactions with Foxworth, he had never heard of anyone being declared delinquent by Foxworth unless they were over 90 days past due on an invoice.[10] TexMix, who received $25,000 from the account where the Kapitus loan proceeds were deposited, is a company that sells concrete.[11]

In approximately mid-July 2021, Lendio made an unsolicited contact with Keith regarding a loan. Lendio is a company that "seek[s] out, actively, people who are in need of different types of financing."[12] Lendio acts "as the intermediary" to pass financing applications to various financing companies, including Kapitus.[13] Other than last minute confirmation of the loan, all of Keith's communications prior to the funding from Kapitus was through Lendio.[14] Plaintiff's corporate representative admitted that Kapitus was unaware of anything said or done prior to funding unless it was on a document, logs, or electronic records.[15] Blake Brock, a representative from Lendio, filled out the Application for Funding.[16] During a call with Lendio, Keith informed Lendio that the purpose of the money would be to pay creditors in his business, Coyote – and that is exactly what Coyote ultimately did with the loan proceeds.[17] The only documents Keith was requested to provide for the loan were six months of bank statements, which Keith provided and a void check for deposit of the funds.[18] He did not fill out the Application, did not see the application, and did not sign the

---

[10] *Id.*
[11] *Id.*
[12] Exhibit A at 15: 9-11.
[13] *Id.* at 15: 17-21.
[14] Exhibit B at 1; Exhibit A, page 20: 24 – 21: 11. Mr. Wolfson was deposed as Kapitus' corporate representative, and was asked whether Keith communicated directly with Kapitus prior to the transaction being funded, and Wolfson responded that he did not "see any" communications in Kapitus' records and he doesn't "think there was" any.
[15] *Id.* at 21: 15-16.
[16] Exhibit B at 1; Exhibit C at KAP000175. see also Plaintiff's Complaint at 1-2.
[17] Exhibit B at 1.
[18] *Id.*

Application. Indeed, through this litigation, Kapitus has been requested to provide the underlying audit trail regarding who signed the application and has thus far failed to do so.

Documents produced by Kapitus make clear, however, that the Application **was not** submitted by Keith. On August 2, 2021, there is an e-mail with the subject line: "Kapitus Offers for merchant: COYOTE AND BUILD, LLC" sent to Tony Chen (a Kapitus employee).[19] On August 3, 2021, there is an e-mail from donotreply@kapitus.com to Jennaro Villa (a Kapitus employee) with the subject line "Kapitus Portal submission **from Blake Brock** for Coyote And Build has been preprocessed."[20] Thus, a document that Kapitus relies on and contends contains misrepresentations **was not even filled out or submitted by Keith.** Instead, it was filled out by Kapitus' affiliate. Another document produced by Kapitus is clear that the transaction was **not initiated** by Keith: "Hey Funding Team, A new offer for Coyote and Build LLC for id 2132883 was **made by Kapitus in Lender Portal**."[21]

With respect to the Application for Funding, Kapitus' corporate representative admits that he "could not know . . . for a fact" that it was filled out by Keith.[22] He admits that he was "just making [an] assumption of how" the document was generated.[23] In fact, the summary judgment record is clear that (1) the application was filled out by Lendio, and (2) submitted to Kapitus' Portion by Lendio.[24] Kapitus admits that it was "highly unlikely" that Keith even had access to the portal to submit the application.[25]

Keith did e-sign one document sent to him, but other than knowing it **was not** the

---

[19] Exhibit C (KAP000173).
[20] *Id.* (KAP000175).
[21] *Id.* (KAP000187).
[22] Exhibit A at 25:16-21.
[23] *Id.*
[24] Exhibit C.
[25] Exhibit A at 74:17 – 75:1-14.

Application, he could not recall which document that was.[26] When Keith ultimately signed the contract with Kapitus, any information he provided was accurate to the best of his knowledge.[27] Keith did not consider himself in arrears in any business debt at the time that he signed the agreement.[28] He knew he owed money, but didn't consider himself overdue based on his experience, industry standard, and lack of letters from creditors.[29]

On approximately August 11, 2021, after obtaining funds from Plaintiff, Keith paid TexMix $25,000.00 from the account that the Kapitus funds were deposited into.[30] The next day, Keith paid Foxworth $50,000.00 from the same account.[31] The balance of the funds was left in the account for Kapitus to start drawing payments from (Kapitus drew repayment on the loan **daily**).[32] Attached as Exhibit 1B to Keith's Declaration are true and correct copies of checks paid to Foxworth and TexMix.[33] The summary judgment record is clear that no Kapitus funds were transferred to any other account or used for any purpose other than as operating capital for Coyote.[34] When asked if there was any evidence that Keith did anything "sinister, inappropriate, [or] . . . defrauding" with the funds and whether Plaintiff had any evidence of fraud, Plaintiff's corporate representative responded "Exactly, I have no idea."[35]

---

[26] Exhibit B at 1-2.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 2.
[31] *Id.*
[32] *Id.*
[33] *Id..*
[34] *Id..* Kapitus' corporate representative was asking what operating capital means and he responded that it's "anything you need for operations of your business." Exhibit A at 34:10-13. He was asked "Which would be paying ongoing obligations, that would be a proper use, that would be operating capital. That's what you use operating capital for, right?" and he responded "Yeah." *Id.* at 34:14-17.
[35] Exhibit A at 121:1-11.

When building a new home, homeowners customarily go to a bank and take out an interim loan to build a house in their own name.[36] Once a percentage of the work is complete, the builder draws on those funds.[37] At the time of the loan from Kapitus, Coyote had six profitable new home construction projects in progress and had at least six similar jobs scheduled to begin after the proceeds were received.[38] The interim loans for these projects were with BancorpSouth.[39] The income and profit that Coyote ultimately received from these contracts were built in to the interim loan.[40]

On approximately August 24, 2021, despite having been paid $50,000, Foxworth unexpectedly stopped selling Keith product without any prior notice. Foxworth then sent an "Intent to Lien" letter to BancorpSouth regarding all jobs in progress.[41] That same day, Keith was contacted by BancorpSouth who let him know that all draws would be halted.[42] Without being able to draw out funds, Keith was effectively out of business.[43] Coyote was then sued by creditors, including Foxworth, as well as the individual homeowners. Since Keith was personal guarantor on many of those loans, he also was plagued by litigation as well.[44] With all funding cut off and no ability to complete the jobs, Keith consulted a bankruptcy attorney and ultimately filed for Chapter 7 bankruptcy on December 22, 2021.[45]

In terms of the Kapitus loan, Coyote did everything it was supposed to do.[46] Kapitus **was never** denied access to any account by Coyote.[47] All loan proceeds from Kapitus were used for

---

[36] Exhibit B at 2.
[37] *Id.*.
[38] *Id.*.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*.
[44] *Id.* at 2-3.
[45] *Id.*
[46] *Id.*
[47] *Id.*.

business purposes – operating capital paid to existing vendors; none of the funds were used for nonbusiness purposes.[48] Basically, the entire situation went belly-up because Foxworth pulled the plug on future sales and issued an Intent to Lien letter that tanked Coyote. Kapitus' inference of fraud is evidently that Keith should have known Foxworth was going to torpedo Coyote after they got the $50,000. That's not fraud. People wanting to defraud a creditor don't take out a loan to pay dischargeable unsecured creditors in preparation to file bankruptcy. It doesn't make logical sense.

## II.     Summary Judgment Evidence

In support of Defendant's Motion for Summary Judgment, Defendant offers the following exhibits in addition to the pleadings and papers on file in this cause:

**Exhibit A:**     Excerpts from Deposition of David Brad Wolfson[49]
**Exhibit B:**     Declaration of Defendant Donald Vincent Keith
**Exhibit C:**     Documents Produced by Plaintiff

## III.     Legal Standard

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment.[50] There are two ways a party can prove that there is no genuine issue of material fact – by presenting evidence to negate an essential element or by alleging that the nonmoving party cannot present evidence of a claim it has the burden of proof on. Under this second standard, the moving party is not required to support its motion with evidence disproving the nonmoving party's claim. Instead, the moving party must point out that there is an absence of evidence to support the nonmoving party's claim.[51]

---

[48] *Id.*
[49] Certain lines of Mr. Wolfson's testimony have been redacted because they were designated as Confidential by Plaintiff's counsel. None of the redacted lines are relied on by Defendant in this Motion for Summary Judgment.
[50] Fed. R. Civ. P. 56(a).
[51] *E.g., Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). As explained by the United States Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

The facts are reviewed in the light most favorable to the non-moving party.; however, "[u]nsupported allegations cannot defeat a properly supported summary judgment motion. Conjecture and speculation cannot preclude summary judgment."[52] Courts are clear that "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence" and that "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim."[53]

## IV.     Arguments & Authorities

11 USC § 523(a) governs those debts which are not dischargeable under Chapter 7 of the bankruptcy code. It is without question that "the provisions of section 523(a) are **strictly construed against creditors and liberally construed in favor of debtors,**' owing to the overriding bankruptcy purpose of granting debtors a fresh start."[54] The creditor (in this case, Kapitus) bears the burden of proving the necessary elements by a preponderance of the evidence.[55] The law is clear that it is not enough to simply show failure to pay – otherwise, this would transform all debts into nondischargeable debts.[56]

---

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

[52] *Howard v. Home Depot*, No. 03-03-CV-880-D, 2004 U.S. Dist. LEXIS 3088, at *4 (N.D. Tex. Mar. 1, 2004).

[53] *Xitronix Corp. v. KLA-Tencor Corp.*, No. A-14-CA-01113-SS, 2016 U.S. Dist. LEXIS 115535, at *11-12 (W.D. Tex. Aug. 26, 2016).

[54] *Rosenberger v. Gallagher (In re Gallagher)*, No. 13-26584-ABA, 2016 Bankr. LEXIS 3313, at *7 (Bankr. D.N.J. Sept. 9, 2016).

[55] *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). See also *Gallagher*, 2016 Bankr. LEXIS 3313, at *7.

[56] *E.g., Pitts v. Lakota (In re Pitts)*, No. 17-2161, 2018 Bankr. LEXIS 2542, at *18 (Bankr. E.D. Ca. Aug. 21, 2018)("**Intentional breaches of contract are not actionable under section**

Kapitus cites Sections 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6), and as its grounds for exceptions to discharge.[57] The summary judgment record demonstrates that Plaintiff cannot prove any of these claims and, moreover, did not even have adequate facts to make the contentions it does in its live pleading. The law is clear that allegations of fraud pursuant to Section 523(a) are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard requirement.[58] Plaintiff has now admitted that it did not have any factual basis to make the swarth of claims made in its live pleading — this is egregious, troubling, and in total contravention to the requirements of the Rules of Civil Procedure.

**A.     Defendant is entitled to summary judgment on Plaintiff's Section 523(a)(2)(A) claim.**

Section 523(a)(2)(A) states that debts obtained by "false pretenses, a false representation, or actual fraud, **other than** a statement respecting the debtor's or an insider's financial condition" are not dischargeable.[59] To prove a § 523(a)(2)(A) cause of action, a creditor must satisfy the following elements: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the debtor made the representation with the intention to deceive the creditor; (4) that the creditor actually and justifiably relied on such representations; **and** (5) that the creditor sustained losses as a proximate result of its reliance.[60] Defendant is entitled to summary judgment because Kapitus cannot demonstrate that Keith made a representation that was false, made with the intent to deceive Kapitus, that Kapitus relied on the representations, or that Kapitus sustained losses as a result of their reliance.

---

**523(a)(2)(A), section 523(a)(4), or section 523(a)(6).**")(emphasis added).
[57] *See generally* Plaintiff's Complaint.
[58] *Chowdary v. Ozcelebi (Ozcelebi)*, No. 21-7001, 2021 Bankr. LEXIS 3541, at *8 (Bankr. S.D. Tex. Dec. 29, 2021)("Because Plaintiffs' § 523(a)(2)(A) claim requires a showing of fraud, Plaintiffs' Amended Complaint must comport with Federal Rule of Civil Procedure 9(b), incorporated by Federal Rule of Bankruptcy Procedure 7009."). See also Fed. R. Bankr. P. 7009.
[59] 11 U.S.C. § Section 523(a)(2)(A)
[60] *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005). See also allege *White v. Cyr*, No. SA-18-cv-01287-JKP, 2020 U.S. Dist. LEXIS 57968, at *10 (W.D. Tex. Apr. 2, 2020).

Importantly, the Fifth Circuit has long held that "an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it **does not amount to an intent to deceive**."[61]

1. **The only allegations of "misrepresentations" Kapitus makes relate to Defendants' financial condition; therefore Section 523(a)(2)(A) does not apply.**

"Section 523(a)(2)(A) expressly excludes all statements respecting a debtor's financial condition, whether written or oral, as a basis for non-dischargeability."[62] The United States Supreme Court has held that "the term 'statement . . . respecting the debtor's . . . financial condition' should be interpreted **very broadly**, encompassing even a statement about a single asset."[63] This is because Section 523(a)(2)(B), which deals with cases of misrepresentations based on a financial condition has a heightened proof requirement based on Congress' intent to balance the potential misuse of such statements.[64]

In a case where Kapitus was the actual plaintiff, a federal bankruptcy court held that the following statements were statements respecting a debtor's financial assets or financial condition and, therefore, **not actionable** under Section 523(a)(2)(A): "BJRP was a profitable and expanding business,

---

[61] *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005).

[62] *Kapitus Servicing, Inc. v. Friedlander (In re Friedlander)*, No. 19-12300, 2020 Bankr. LEXIS 1681, at *10 (Bankr. N.D. Ohio June 25, 2020).

[63] *Id.* (quoting *Archer, Lamar & Cofrin v. Appling*, 138 S.Ct. 1752, 1764 (2018)).

[64] *Archer*, 128 S.Ct. at 1764 ("Specifically, as detailed in *Field*, the House Report noted that **consumer finance companies frequently collected information from loan applicants in ways designed to permit the companies to later use those statements as the basis for an exception to discharge.** Commonly, a loan officer would instruct a loan applicant "'to list only a few or only the most important of his debts'" on a form with too little space to supply a complete list of debts, even though the phrase, "'I have no other debts,'" would be printed at the bottom of the form or the applicant would be "'instructed to write the phrase in his own handwriting.'" **If the debtor later filed for bankruptcy, the creditor would contend that the debtor had made misrepresentations in his loan application and the creditor would threaten litigation over excepting the debt from discharge. That threat was "often enough to induce the debtor to settle for a reduced sum," even where the merits of the nondischargeability claim were weak.**")(citations omitted)(emphasis added).

BJRP was not insolvent, BJRP was current with all lenders and creditors, BJRP had only one other funder by the name of OnDeck."[65] In the instant case, the alleged misrepresentations Kapitus contends constitute violations of Section 523(a)(2)(A) are: "(1) Neither Debtor/Defendant nor Merchant planned to file for bankruptcy protection within the next 12 months; (2) Neither Debtor/Defendant nor Merchant were insolvent; (3) There were no material adverse changes, in the condition, operation, or ownership of Merchant; (4) Merchant's financial condition was accurately reflected to Kapitus; (5) Merchant intended to use the funding amount for business purposes rather than personal, family, or household purposes; (6) Neither Debtor/Defendant nor Merchant were in arrears with any of their creditors; (7) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; (8) Merchant would ensure that funds adequate to remit payment to Kapitus were kept in the Account; and (9) Merchant's Receipts were unencumbered and free and clear of all claims and liens."[66] Numbers 1-4, 6, and 8-9 plainly relate to Keith's financial assets and financial condition. As such, **Kapitus cannot use these statements** to avoid the heightened proof requirements of Section(a)(2)(B).

> 2. **The other alleged "misrepresentations" are conclusively negated by the summary judgment record.**

With respect to number 5, the summary judgment record is uncontroverted that Keith used the funding in question **for business purposes**. Indeed, it is troubling that Kapitus alleged that he did not when Kapitus' corporate representative admitted that as of July 6, 2023, he "does not know what" Keith did with the money.[67] While Kapitus' complaint is littered with accusations of fraud, larceny, and embezzlement, Kapitus' own corporate representative admitted **under oath, approximately one month ago** that Kapitus does not know why Keith stopped paying:

---

[65] *Friedlander*, 2020 Bankr. LEXIS 1681 at *14.
[66] Plaintiff's Complaint at 16-17.
[67] Exhibit A at 30:18 – 31: 1-16.

> Q. So sitting here today as a company representative, Kapitus does not know why he stopped paying y'all, right?
>
> **A. No, I don't know. I don't know why.**[68]

In any event, the summary judgment record is clear and unassailable that the funds were used to pay unsecured creditors – in other words, solely for business purposes.[69] Even Kapitus admits that payments to vendors (e.g. Foxworth and TexMix) would be a permissible business purpose. Kapitus' corporate representative was asked what operating capital means and he responded that it's "anything you need for operations of your business."[70] He was asked "Which would be paying ongoing obligations, that would be a proper use, that would be operating capital. That's what you use operating capital for, right?" and he responded "Yeah."[71] With respect to number 7, the summary judgment record is clear that there was one account for payment and that Kapitus was never denied access to any account.[72]

2.    **Kapitus cannot present evidence to raise a fact issue on fraud.**

Keith is also entitled to summary judgment because Kapitus cannot raise a fact issue on fraud. In order to prevail pursuant to Section 523(a)(2)(A), "Plaintiff must establish that at the time when the Debtor entered into the loan agreement at issue, the Debtor either knew that she lacked the ability to repay the Loan or that she had no intent to repay it."[73] The law is clear, though, that "an inability to pay in and of itself **does not** support an inference that the Debtor never intended to repay the Loan."[74]

A case that is directly on point is *Kapitus Servicing, Inc. v. Friedlander (In re Friedlander)*, – another

---

[68] *Id.* at 42:16-22.
[69] Exhibit B; Exhibit 1B.
[70] Exhibit A at 34:10-13.
[71] *Id.* at 34:14-17.
[72] Exhibit B at 3.
[73] *Atlanta Reg'l Ctr., LLC v. Smith (In re Smith)*, 578 B.R. 866, 877 (Bankr. N.D. Ga. Dec.1, 2017).
[74] *Id.*

case where Kapitus was the actual plaintiff. There, the court found that there was no evidence of intent to deceive:

> Although the Court has no way of knowing for certain the debtor's state of mind, the circumstantial evidence is consistent with the debtor doing everything he could to keep the restaurant operations going during a difficult period. This includes providing Kapitus with whatever information it requested: including bank statements, tax returns, and other information about BJRP and affiliated companies. These records were like an open book into the restaurant's financial situation, identifying BJRP's other lenders as well as transfers back and forth among related entities. Given the debtor's personal guaranty of the debt BJRP owed to Kapitus, the debtor also had no incentive to have BJRP borrow money from Kapitus with no intention of paying it back. Plus, the record establishes that BJRP made regular weekly payments. Thus, the Court need not decide whether Kapitus has established the other elements of nondischargeability for false pretenses or false representation under *Rembert*. [75]

The summary judgment record demonstrates that Keith spent the money from the Kapitus loan on unsecured creditors related to the business in order to continue the business – again, a use that Kapitus admits is a proper use as working capital. [76] The record also demonstrates that he had several contracts regarding builds in process and future builds, but Foxworth's actions in preventing Keith from taking out any draws from the BancorpSouth homeowners' loan effectively prevented him from moving forward with building the homes. [77] There is simply no plausibility to Kapitus' conclusory assertions of fraud. Indeed, Kapitus' own corporate representative admitted that Kapitus **did not have any actual evidence of fraud** prior to filing this lawsuit:

Q.    Well, I'm not moving on with it yet because do you agree that you, Kapitus, has sued my client for fraud, embezzlement, and larceny?
**A.    Yes, we do.**
Q.    And why did you sue my client making those allegations not even knowing what he had done with the funds?

---

[75] *Kapitus Servicing, Inc. v. Friedlander (In re Friedlander),* No. 19-12300, 2020 Bankr. LEXIS 1681, at *10 (Bankr. N.D. Ohio June 25, 2020).
[76] Exhibit B at 2; Exhibit 1B. Kapitus' corporate representative was asking what operating capital means and he responded that it's "anything you need for operations of your business." Exhibit A at 34:10-13. He was asked "Which would be paying ongoing obligations, that would be a proper use, that would be operating capital. That's what you use operating capital for, right?" and he responded "Yeah." *Id.* at 34:14-17.
[77] Exhibit B at 3.

**A.** Because as stated before several times, when you look at the circumstances under which this happened it is not unreasonable to infer that he committed all of those acts. So, you can present a whole bunch of new stuff here now that came out discovery, was not available when the lawsuit was started.[78]

When pressed as to why he thought it was proper to accuse someone of larceny, fraud, and embezzlement without a factual basis, Kapitus' corporate representative responded: "**Perhaps he should have taken our phone call and answered an e-mail, we wouldn't have to be here.**"[79] So if you don't return a Kapitus phone call, you are an embezzler. Fraud was just automatically "inferred" from the fact that payments stopped quickly, (because Foxworth unexpectedly cut off building supplies and blocked funding from interim construction loans), the business closed soon after (because Foxworth unexpectedly cut off building supplies and blocked funding from interim construction loans), and filed for bankruptcy a couple of months later (because Foxworth unexpectedly cut off building supplies and blocked funding from interim construction loans).[80]

Making specious allegations in a court pleading means something. Accusing someone of fraud, embezzlement, and larceny means something. The Federal Rules of Civil Procedure are clear that fraud claims are subject to **a heightened pleading standard**, yet through discovery, it is revealed that Kapitus had **no basis** to make these allegations aside from its assumption and "inference." The Fifth Circuit has long held that "A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should seek to redress a wrong, not to find one."[81]

Thus, the summary judgment record demonstrates as a matter of law that Kapitus cannot demonstrate that Keith made a representation that was false, that a representation was made with the intent to deceive Kapitus, that Kapitus relied on the representations, or that Kapitus sustained losses

---

[78] Exhibit A at 123:10-16 (emphasis added).
[79] *Id.* at 128:1-9.
[80] *Id.* at 134-35.
[81] *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).

as a result of its reliance.

**B.      Defendant is entitled to summary judgment on Kapitus' Section 523(a)(2)(B) claim.**

"Section 523(a)(2)(B) excepts from discharge debts for obtaining money, property, or services through the use of a written statement. A creditor must prove, by a preponderance of the evidence, that the debt was obtained by the use of a statement: (1) in writing; (2) that is materially false; (3) respecting the debtor's or an insider's financial condition; (4) on which the creditor to whom the debtor is liable . . . reasonably relied; and (5) that the debtor caused to be made or published with the intent to deceive. [82]

Kapitus claims that the false statements made are: "(1) Neither Debtor/Defendant nor Merchant planned to file for bankruptcy protection within the next 12 months; (2) Neither Debtor/Defendant nor Merchant were insolvent; (3) There were no material adverse changes, in the condition, operation or ownership of Merchant; (4) Merchant's financial condition was accurately reflected to Kapitus; (5) Merchant intended to use the funding amount for business purposes rather than personal, family, or household purposes; (6) Neither Debtor/Defendant nor Merchant were in arrears with any of their creditors; (7) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; (8) Merchant would ensure that funds adequate to remit payment to Kapitus were kept in the Account; and (9) Merchant's Receipts were unencumbered and free and clear of all claims and liens."[83] Kapitus further alleges that Keith: "(1) Failed to disclose Merchant's true financial condition to Kapitus; (2) Filed for bankruptcy under chapter 7 of the Bankruptcy Code on December 22, 2021 (Bankruptcy Case, ECF 1 ); (3) On December 22, 2021, caused the Merchant to file for bankruptcy under chapter 7 of the

---

[82] *Garnett v. Harvey (In re Harvey)*, No. 19-02, 2020 Bankr. LEXIS 665, at *16 (Bankr. W.D. Wis. Mar. 13, 2020). See also 11 U.S.C. § 523(a)(2)(B).
[83] Plaintiff's Complaint at 19-20.

Bankruptcy Code with this Court, Case No. 21-60560-MMP, which Petition was signed by Debtor/Defendant in his capacity as sole and managing member of the Merchant (Bankruptcy Case, ECF 1 ); (4) Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus; (5) Failed to provide Kapitus with irrevocable access to the Account for payment; (6) Allowed the Account to be frozen, which prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement; and (7) Failed to ensure Merchant's Receipts were unencumbered and free and clear of all claims and liens but for Kapitus' liens."[84]

Yet each of these alleged "failures" **alleges nothing more than breach of contract** and there is no evidence of an intent to deceive, misrepresent, or defraud. Kapitus has pleaded **no facts** supporting the allegation that Keith made material misrepresentations or intended to induce Kapitus to do anything – indeed, in its live pleading, Kapitus merely states:

> "**Upon information and belief**, at the time the representations and/or material omissions were made, the Debtor/Defendant knew Debtor/Defendant's representations and omissions were false, untrue, misleading, and, as a direct and proximate cause of these intentional misrepresentations and omissions, the Debtor/Defendant knew that Kapitus would be induced to tender the Purchase Price to Merchant.[85]

> "**Upon information and belief**, Debtor/Defendant intended to induce Kapitus to act or refrain from acting upon the Debtor/Defendant's misrepresentations and/or material omissions, and Kapitus justifiably relied upon such false representations and omissions.[86]

In other words, an inference with no investigation or care of the actual facts surrounding Foxworth and why Coyote suddenly failed. These types of contentions are simply not enough to establish fraud.[87]

---

[84] *Id.* at 20.
[85] *Id.* at 18.
[86] *Id.*
[87] *E.g., Jalal-Uddin Saeed v. Bennett-Fouch Assocs., LLC,* No. 3:11-cv-01134-F, 2012 U.S. Dist. LEXIS 200510, at *13 (N.D. Tex. Aug. 26, 2012)("All fraud claims made on information and belief must be supplemented with a factual basis for that belief. **Here, many of Plaintiffs' allegations made on information and belief are pure speculation, with neither facts to support them nor claims that such facts were peculiarly within perpetrator's knowledge. Allegations of such a speculative**

The summary judgment record is equally devoid of **any evidence** of false statements or an intent to deceive. It bears repeating, Kapitus' own corporate representative has admitted that Kapitus just "infer[red]" that Keith committed "all of those acts" because of "the circumstances."[88] Kapitus' claims simply do not make plausible sense – if Keith had no intention of repaying the loan and continuing his business, why would he have paid dischargeable unsecured creditors he needed for homebuilding supplies? This is nothing more than a debt that Kapitus is attempting to recast as fraud. Defendant also incorporates the arguments and authorities set forth in Section IV.A.2.

**C.      Defendant is entitled to summary judgment on Kapitus' Section 523(a)(4) claim.**

11 U.S.C. § 523(a)(4) excepts from discharge claims for "fraud or **defalcation while acting in a fiduciary capacity**, embezzlement, or larceny."[89] The existence of a fiduciary relationship under 11 U.S.C. § 523 is determined under federal law.[90] "[A] creditor must prove: (1) the existence of an express or technical trust; (2) the debtor owed duties arising from the trust; and (3) the debtor breached the fiduciary duty by defalcation."[91]

The summary judgment record and the law are clear that there is no fiduciary relationship. The law cannot be clearer that "A simple contractual relationship does not, without more, create a fiduciary relationship."[92] Indeed, district courts where Kapitus is again plaintiff have held that these claims are not sufficient – yet, Kapitus continues to make these same contentions in this case. For

---

nature are exactly what Rule 9(b) seeks to prevent, and to allow such thinly supported claims to go forward would defeat the purposes of Rule 9 set out above. Consequently, the Court must find that Plaintiffs' fraud allegations do not meet the Rule 9(b) standard.")(citations omitted)(emphasis added).

[88] Exhibit A at 123: 10-16.

[89] 11 U.S.C. § 523(a)(4).

[90] *Atlanta Reg'l Ctr., LLC v. Smith (In re Smith)*, 578 B.R. 866, 877 (Bankr. N.D. Ga. Dec.1, 2017).

[91] *Donut Café, LLC v. Dieyleh (In re Dieyleh)*, No. 21-01127-JGR, 2022 Bankr. LEXIS 1186, at *24 (Bankr. Dist. Colo. Apr. 18, 2022).

[92] *Strategic Funding Source, Inc. v. Veale (In re Veale)*, No. 21-50486 (BLS), 2021 Bankr. LEXIS 3271, at *20 (Bankr. Dist. Del. Nov. 30, 2021).

instance, in *In re Dodge*, the Georgia Northern District Bankruptcy Court held that Kapitus' allegations were not even sufficient from a pleadings perspective and dismissed the 523 (a)(4) claim. The court noted that:

> "As an initial matter, the Agreement itself does not create a fiduciary relationship. Kapitus and the Debtor were simply parties to a contract and, while the contract imposed obligations on the Debtor's company with respect to repayment of a debt, none of those obligations could be construed as fiduciary in nature."[93]

Similarly, in the instant case, there is nothing between the parties that creates any type of fiduciary relationship. The summary judgment record is uncontested and uncontestable that this is a debtor/creditor breach of contract relationship.

Kapitus' embezzlement allegations make even less sense. "To prove an embezzlement claim, the plaintiff must establish three elements: '(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud.' . . . The Supreme Court has clarified that the final element requires a showing of wrongful intent."[94] "The degree of fraud required for embezzlement is fraud in fact involving moral turpitude or intentional wrongdoing, for the purpose of permanently depriving another of his property."[95] The summary judgment record demonstrates that this was a loan transaction willingly entered into by Kapitus; in other words, there is an absence of evidence that Keith had any property in his possession wrongfully. Again, at the risk of repetition, the summary judgment record demonstrates that the money was used to pay business expenses that even Kapitus admits are valid[96] – thus, there is an absence of evidence that the money was used for a purpose other

---

[93] *Strategic Funding Source, Inc. v. Dodge (In re Dodge)*, 623 B.R. 663, 668 (Bankr. N.D. Ga. Sept. 30, 2020).
[94] *El Dorado Liquidation Assocs., LLC v. Mack (In re Mack)*, No. AZ-22-1140-LSF, 2023 Bankr. LEXIS 602, at *8 (9th Cir. Bankr. Panel Mar. 7, 2023).
[95] *Kapitus Servicing, Inc. v. Friedlander (In re Friedlander)*, No. 19-1070, 2021 Bankr. LEXIS 2360, at *30 (Bankr. N.D. Ohio Aug. 27, 2021).
[96] Kapitus' corporate representative was asking what operating capital means and he responded that it's "anything you need for operations of your business." Exhibit A at 34:10-13. He was asked "Which

than which it was entrusted. The summary judgment record also demonstrates the circumstances (the

subsequent decisions and actions of Foxworth) leading to Coyote and Keith being unable to pay back

the debt – and, as outlined above, Kapitus' corporate representative has admitted to not having any

evidence of fraud. Thus, there is an absence of evidence of circumstances indicating fraud.

> Similarly, larceny requires:

> "the actual or constructive taking away of property of another without the consent
> and against the will of the owner or possessor with the intent to convert the property
> to the use of someone other than the owner. Larceny for purposes of § 523(a)(4)
> requires proof that the debtor wrongfully and with fraudulent intent took property
> from its rightful owner. As distinguished from embezzlement, the original taking of
> the property must be unlawful."[97]

It is unclear how a loan could constitute an "unlawful" taking of property. Even keeping with Kapitus'

characterization of an "forward purchase agreement," it is still a transaction that the parties agreed to

– in other words, there was no unlawful taking of property. Thus, the summary judgment record

demonstrates an absence of evidence that there was any taking of property from Kapitus without

Kapitus' content. There is an absence of evidence that any property was taken unlawfully.

> There is a wholesale absence of anything in the summary judgment record that would establish

the existence of a fiduciary relationship, embezzlement, or larceny and the summary judgment record

is clear that this was a situation of a business loan that, unfortunately, Keith was unable to repay

because of Foxworth's unexpected actions. Indeed, allegations similar to Kapitus' have been held to

not even meet the pleadings standards:

> SFS argues that its claim is nondischargeable under § 523(a)(4) because the Debtor
> took the funds with no intent to repay them or used the funds for personal expenses,
> rather than the Business's operations. These allegations are conclusory and offer no
> facts to support them. The facts allege that the transaction between SFS and the
> Debtor was a business loan. There is no plausible claim for nondischargeability based
> on embezzlement because the Complaint does not allege that SFS entrusted its

---

would be paying ongoing obligations, that would be a proper use, that would be operating capital.
That's what you use operating capital for, right?" and he responded "Yeah." *Id.* at 34:14-17.
[97] *Brady v. McAllister (In re Brady)*, 101F.3d 1165, 1172-73 (6th Cir. 1996).

property to the Debtor. At the time SFS funded the loan, the loan proceeds ceased being SFS's property and became the Business's property. The Complaint also does not support a plausible claim for larceny since the Debtor did not take SFS's property without its consent.[98]

**D.     Defendant is entitled to summary judgment on Kapitus' Section 523(a)(6) claim.**

Section 523(a)(6) provides that an individual debtor will not get a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

The Supreme Court has determined that the word "willful" under Section 523(a)(6) modifies the word "injury," indicating that a finding of non-dischargeability requires a **deliberate or intentional *injury*, not merely a deliberate *act* that results in injury.**[99] As explained by the court in *In re: Smith*:

> The imprecise assertions offered by the Plaintiff, however, show why courts cannot simply equate a breach of contract, even if the breach is intentional, with the type of conduct that meets the standard for willful and malicious injury. As correctly noted by the Debtor, the Plaintiff does not contend that the Debtor intended the injury sustained by the Plaintiff. Even if the Debtor should have known her failure to repay the loan or account for the proceeds would harm the Plaintiff, such intent would not establish the type of injury required under Section 523(a)(6). Further, the debt itself must arise from the willful and malicious conduct. When such conduct only occurs after the debt is created, it does not support a finding of nondischargeability under this exception.[100]

There is a wholesale absence of evidence of any "willful and malicious injury" by Keith. The summary judgment record demonstrates that the crux of Plaintiff's complaints are nothing more than a failure to pay. Kapitus' claims that any alleged fraud or misrepresentations constitute a "willful and malicious" act are defeated for the reasons set forth in Sections IV.A. and IV.B, which are incorporated herein by reference.

---

[98] *Strategic Funding Source, Inc. v. Veale (In re Veale)*, No. 21-50486, 2021 Bankr. LEXIS 3271, at *22 (Bankr. Dist. Del. Nov. 30, 2021).
[99] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).
[100] *Atlanta Reg'l Ctr., LLC v. Smith (In re Smith)*, 578 B.R. 866, 877 (Bankr. N.D. Ga. Dec.1, 2017).

## V. Conclusion and Prayer

Defendant prays that this Court grant them summary judgment on Kapitus' claims for the reasons set forth above. Defendant further prays for any and all such other relief to which they may be entitled whether at law or in equity.

Respectfully Submitted,

/s/ Jim Dunnam
JIM DUNNAM
State Bar Number 06258010
DUNNAM AND DUNNAM
4125 W. Waco Drive
Waco, TX 76710
Tel: (254) 753-6437
Fax: (254) 753-7434
jimdunnam@dunnamlaw.com

and

/s/ Erin B. Shank
ERIN B. SHANK
State Bar Number 01572900
ERIN B. SHANK, P.C.
1902 Austin Avenue
Waco, TX 76701
PHONE (254) 296-1161
FAX (254) 296-1165

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing (including attachments) has been served on all counsel of record in compliance with Texas Rule of Civil Procedure 21a on this 4th day of August, 2023, properly addressed as follows:

**Via Electronic Service:**
Misty A. Segura
3040 Post Oak Boulevard, Suite 1400
Houston, TX 77056
Telephone: 713.212.2643
E-Mail: msegura@spencerfane.com

**Via Electronic Service:**
Elizabeth M. Lally
13520 California Street, Suite 290
Omaha, NE 68154
Telephone: 402.965.8600
Facsimile: 402.965.8601
E-Mail: elally@spencerfane.com

ATTORNEYS FOR PLAINTIFF


/s/Jim Dunnam
JIM DUNNAM