**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 30, 2023.**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| DONALD VINCENT KEITH & JOCQUALINE SUSAN KEITH, | § § § | CASE NO. 21-60559-MMP |
| DEBTORS. | § § | CHAPTER 7 |
| | § § | |
| KAPITUS SERVICING, INC., AS, SERVICING AGENT FOR KAPITUS, LLC | § § § § | |
| PLAINTIFF, | § § | |
| V. | § § | ADVERSARY NO. 22-06003-MMP |
| DONALD VINCENT KEITH, | § § § | |
| DEFENDANT. | | |

1

OPINION

I.    **INTRODUCTION**

Before the Court is a motion for summary judgment ("**Motion**," ECF No. 50)[1] filed by Defendant Donald Vincent Keith ("**Keith**"), a response ("**Response**," ECF No. 64) filed by Plaintiff Kapitus Servicing, Inc., as Servicing Agent for Kapitus, LLC ("**Kapitus**"), and a reply ("**Reply**" ECF No. 67) filed by Keith. Kapitus asks the Court to declare nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6)[2] a debt Keith owes to Kapitus. Keith moves for summary judgment on Kapitus's allegations, asserting that the debts owed to Kapitus resulted from dischargeable breaches of contract. The Court finds that there is no genuine issue of material fact regarding Kapitus's claims under §§ 523(a)(2)(A), (a)(4), and (a)(6), and that Keith is entitled to judgment as a matter of law on those claims. The Court also finds, however, that a genuine issue of material fact exists about Kapitus's claim under § 523(a)(2)(B), and therefore Keith is not entitled to judgment as a matter of law for that claim. Accordingly, the Court will grant the Motion in part and deny it in part.

II.    **JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, and the Standing Order of Reference of the United States District Court for the Western District of Texas, dated October 4, 2013. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409. Both Plaintiff and Defendants have consented to the entry of final orders and a judgment by this Court in this adversary proceeding. ECF Nos. 68 and 69.

---

[1] "ECF" denotes the electronic filing number.
[2] All statutory references are to Title 11 of the United States Code unless otherwise specified.

2

### III. BACKGROUND

This dispute arises from a forward purchase agreement ("**Agreement**")[3] between Keith's former business Coyote Design and Build LLC ("**Coyote**") and Kapitus, signed August 9, 2021. Keith guaranteed Coyote's financial obligations under the Agreement. Def.'s Ex. C at 14. The basic facts are uncontested. In July 2021, Keith, who had been working in the construction business for over a decade and was the owner of Coyote, began discussions for financing for Coyote with Lendio Partners, LLC ("**Lendio**"). Def.'s Ex. B at 2. Lendio is an intermediary financing company which matches parties seeking financing with those providing it. Keith needed operating capital for Coyote, and Lendio matched Coyote with Kapitus, who agreed to provide financing through a forward purchase agreement. Kapitus and Keith only communicated with each other through Lendio before the Agreement was signed. Def.'s Ex. A 6-8. Lendio filled out the Kapitus application for financing and submitted it to Keith for review and signature. Def.'s Ex. B at 2. After Keith signed it, Lendio filed the application for financing with Kapitus. Def.'s Ex. C at 26.

Under the Agreement, Kapitus would purchase a percentage of Coyote's accounts receivable for $80,000.00 less $2,400.00 in closing fees. *Id.* at 3. In exchange, Coyote would give Kapitus 9.6% of its receipts each month until Kapitus had been paid back a total of $113,600.00. *Id.* To ensure payment, Kapitus took a blanket security interest in all of Coyote's property and a personal guaranty from Keith. *Id.* at 15-17. Kapitus also required Coyote to maintain an ACH debit account from which Kapitus could withdraw $616.00 daily in satisfaction of the Agreement. *Id.* at 4.

---

[3] Generally, under a forward purchase agreement parties agree to buy or sell an asset at an agreed upon price at a future date or upon a specified future event. Under the Agreement here, Defendant's Exhibit C, Kapitus paid $80,000.00 to purchase $113,600.00 of Coyote's receivables, to be delivered over time.

3

Importantly the Agreement included "Representations and Acknowledgements," under which Keith agreed, among other things, that he and Coyote did not plan to file for bankruptcy, he did not plan to sell Coyote, and that he and Coyote were current and not in arrears "on any business or personal loans *or other financial obligations*," except as previously disclosed to Kapitus. Def.'s Ex. C at 24 (emphasis added).

After receiving the funds from Kapitus, Keith immediately used the funds to pay Coyote's vendors for previously supplied goods. Pl.'s Ex. 7; Def.'s Ex. B at 3. He paid $50,000.00 to Foxworth-Galbraith Lumber Company ("Foxworth") and $25,000.00 to TexMix, a concrete supply company. Def.'s Ex. 1B. Keith argues Coyote was not in arrears with Foxworth or TexMix. Def.'s Mot. for Summ. J. at 2-3. Kapitus argues the payments were late. Pl.'s Ex. 10 at 15. Making the payments to Foxworth and TexMix reduced Keith's personal liability on his guaranty of Coyote's obligations.

Notwithstanding the $50,000 payment, Foxworth refused to do further business with Coyote and sent an "Intent to Lien" letter to Bancorp South, where Coyote maintained its interim construction accounts. Def.'s Ex. B at 3. These accounts contained funds from Coyote's customers for use in the construction of their homes. *Id.* Upon receiving Foxworth's letter, Bancorp South froze the accounts and Coyote ceased operations. *Id.* Compounding issues, beginning on August 26, Kapitus's daily $616.00 draw was rejected due to insufficient funds in Coyote's ACH debit account. Pl.'s Ex. 8. Thus, just a few weeks after Kapitus advanced funds to Coyote, Coyote ceased operations.

Foxworth then filed a state court lawsuit against Coyote and Keith for breach of contract on October 11. Pl.'s Ex. 10. Both Coyote and Keith personally filed for bankruptcy in late 2021.

4

Coyote, which by then had virtually no assets, moved quickly through liquidation and its case was closed with no distribution to creditors. ***In re Coyote Design and Build, LLC***, Case No. 21-60560-mmp. Similarly, Keith's case had no distribution to creditors, generally discharged the Keiths' debts and quickly closed.

Kapitus filed this adversary proceeding, asking the Court to find nondischargeable Keith's personal guaranty of Coyote's performance under the Agreement. Kapitus argues that Keith's guaranty of Coyote's obligations is nondischargeable under §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). In response, Keith argues that (i) § 523(a)(2)(A) does not apply when the only alleged fraudulent statements at issue concern the debtor's financial condition, (ii) § 523(a)(2)(B) does not apply because Kapitus has not identified a fraudulent statement, (iii) § 523(a)(4) does not apply because Keith was not acting in a fiduciary capacity when funds were advanced, and (iv) § 523(a)(6) does not apply because the facts alleged do not show willfulness and maliciousness.

## IV. SUMMARY JUDGMENT STANDARD

Keith moves for summary judgment on each of Kapitus's claims of nondischargeability. Under Federal Rule of Civil Procedure 56(a) as incorporated by Federal Rule of Bankruptcy Procedure 7056, the Court may grant summary judgment on all issues where the movant has shown that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. The summary judgment standard is "not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." ***James v. Sadler***, 909 F.2d 834, 837 (5th Cir. 1990) (citing ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986).

A court must evaluate the evidence in the summary judgment record in a light most favorable to the non-movant. ***City and Cty. Of San Francisco, Calif. v. Sheehan***, 575 U.S. 600, 603 (2015). In an action to determine the dischargeability of a debt, the creditor has the burden of proof and must establish their claim by the preponderance of the evidence. ***Grogan v. Garner***, 498 U.S. 279, 287 (1991). Generally, issues of state of mind or intent preclude summary judgment. ***Kand Med., Inc. v. Freund Med. Products, Inc.***, 963 F.2d 125, 127 (6th Cir. 1992). But even in cases involving state of mind or intent, if the nonmoving party rests on improbable inferences and unsupported speculation, summary judgment may be appropriate. ***Int'l Shortstop, Inc. v. Rally's Inc.***, 939 F.2d 1257, 1266 (5th Cir. 1991) (citation omitted). Summary judgment is not precluded "by mere conclusionary allegations or bald assertions unsupported by specific facts." ***Leon Chocron Publicidad Y Editora, S.A. v. Jimmy Swaggert Ministries***, 1993 WL 129794, at *2 (5th Cir. 1993).

## V. DISCUSSION

A Chapter 7 debtor can receive a discharge of most debts. § 727(a). Section 523, however, excepts from discharge debts Congress has deemed nondischargeable. While § 523 protects certain creditors, it should be strictly construed against the objecting creditor and liberally construed in favor of the debtor. ***Boyle v. Abilene Lumber (In re Boyle)***, 819 F.2d 583, 588 (5th Cir. 1987).

Kapitus's complaint seeks a nondischargeability determination under §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). Keith moves for summary judgment on each of these claims. The Court will address each claim in turn.[4]

---

[4] In its Response, Kapitus briefs an issue about the effects of the COVID-19 pandemic on Coyote and argues that a fact issue is raised by statements made by Keith during a deposition. The Court will not address this issue, however,

6

A. **§ 523(a)(2)(A) Nondischargeability**

Section 523(a)(2)(A) excepts from discharge debts that were obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Court must distinguish between claims of false pretenses and representations and claims of actual fraud under § 523(a)(2)(A). ***Husky Int'l Elecs. Inc. v. Ritz,*** 578 U.S. 355, 366 (2016). The terms in § 523(a)(2)(A) must be construed to contain the "elements that the common law has defined them to include." ***Field v. Mans***, 516 U.S. 59, 69 (1995).

To succeed in a nondischargeability action for false representation or false pretenses, a creditor must show that: (i) the debtor knowingly or fraudulently made false representations; (ii) describing past or current facts; (iii) that were relied on by the other party. ***In re Allison***, 960 F.2d 481, 483 (5th Cir. 1992). Actual fraud claims, on the other hand, are hard to precisely define, but often include false representations. Actual fraud under § 523(a)(2)(A) can also encompass forms of fraud like fraudulent conveyance schemes which don't require the debtor to make a fraudulent representation. ***Husky Int'l Electronics Inc.***, 578 U.S. at 359.

The statute contains a key limiting phrase, however. Debts obtained by statements "respecting the debtor's or an insider's financial condition" do not fall under the ambit of § 523(a)(2)(A), and instead fall under § 523(a)(2)(B), which sets a higher burden for a creditor to obtain nondischargeability. Subsections (A) and (B) are mutually exclusive—a single statement

---

because it was not raised in Kapitus's initial complaint, it does not clearly or directly tie to the issues which were pled, and it does not raise a *material* fact issue for the nondischargeability claims made.

7

cannot fall into both. ***In re Ophaug***, 827 F.2d 340 (8th Cir. 1987), 4 COLLIER ON BANKRUPTCY ¶ 523.08 (Richard Levin & Henry J. Sommer eds., 16th ed.).[5]

In *Appling*, the Supreme Court interpreted the limiting phrase in § 523(a)(2)(A) broadly, holding that a statement "respecting" a debtor's financial condition is one which has a direct relation to or effect on the debtor's overall financial status. ***Lamar, Archer & Cofrin, LLP v. Appling***. 138 S. Ct. 1752, 1761 (2018). Relying on this definition of "statement," Kapitus argues that Keith's failure to disclose his and Coyote's outstanding debts to Foxworth when applying for the Kapitus' loan is not a "statement" as defined in § 523(a)(2)(A). Therefore, according to Kapitus, Keith's *omission* (rather than a statement) regarding his financial condition makes the debt nondischargeable under § 523(a)(2)(A). *Id.* at 1759 (using Webster's dictionary to define "statement" as "the act or process of stating, reciting, or presenting orally or on paper.").

*Appling*'s definition of "statement," however, must be considered in context. *Appling* characterized Webster's definition as uncontested and undisputed between the parties and focused instead mainly on the meaning of "respecting financial condition." *Id.* at 1757. Kapitus's focus on *Appling*'s definition of "statement" therefore seems misplaced.

Recently, in an analogous case also addressing "statements respecting financial condition" under § 523(a)(2)(A), Judge Tony Davis noted that "in both Black's Law Dictionary and in the Federal Rules of Evidence, the word 'statement' is defined to include 'nonverbal conduct intended as an assertion.'" ***In re Shurley***, 2021 WL 5508518 (Bankr. W.D. Tex. Nov. 24, 2021). Judge

---

[5] Of course, a debt might be nondischargeable under both subsections based on different statements about the same debt, but Kapitus does not make this argument.

Davis' broader definition of statement respecting financial condition would appear to encompass an omission by a debtor on arrearages.

Kapitus's reading of "statement respecting financial condition" appears inconsistent with the structure of §523. Judge Davis reasoned:

> "Reading sections 523(a)(2)(A) and 523(a)(2)(B) together, it is clear that Congress wanted 'statements respecting financial condition,' to be in writing in order for a debtor to lose the discharge. There is no reason why Congress would treat oral misrepresentations about financial condition—dischargeable under sections 523(a)(2)(A)—differently from misleading omissions…"

*Shurley* at *10. This reading of the section is also supported by the Supreme Court's interpretation of § 523(a)(2)'s policy in *Appling*. There, the Court noted that the heightened requirements of § 523(a)(2)(B) are intended to prevent creditor abuse of financial condition-related statements. *Appling* at 1763-64.

Confining the limiting phrase only to oral or written statements and not omissions about the debtor's financial condition leads to an odd result. If a debtor signed the statement "I am not in arrears on any debts," a creditor (like Kapitus here) could later argue that the debtor *both* omitted information about financial condition (violating § 523(a)(2)(A)) *and* supplied false information about financial condition (violating § 523(a)(2)(B)). This is despite Congress's intent to segregate these two claims. H.R. Rep. 959-595 at 129-132 (1977). Kapitus's reading of § 523(a)(2)(A) flouts legislative history suggesting that such a reading would encourage less scrupulous creditors to rush debtors through the loan application process, allowing the creditor to later file a nondischargeability action against an unwitting debtor. *See Appling*, 138 S. Ct. at 1763-64 (describing how § 523(a)(2)(B) was enacted specifically to counter Congressionally alleged

9

creditor abuse and manipulation). Thus, creditors who seek nondischargeability for statements respecting financial condition have a higher burden: they need to get it in writing. The provisions of §§ 523(a)(2)(A) and (B) are mutually exclusive and binary—a statement either respects a Debtor's financial condition, or it does not.

Kapitus cites *In re Selenberg* for the proposition "that a debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)." *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 399 (5th Cir. 2017) (internal citation omitted). But *Selenberg* does not address § 523(a)(2)(A)'s exception for a "statement respecting financial condition," it only deals with the truism that silence about a material fact can constitute a false representation under § 523(a)(2)(A). *Id*. While *Selenberg* is correct that a debtor's silence *can* constitute false representation under § 523(a)(2)(A), the debtor's silence respecting his financial condition is not actionable under this subsection of § 523(a).

All of the statements and omissions Kapitus alleges in support of its nondischargeability claim were made about Keith's or Coyote's financial condition. Pl.'s Compl. 17. Thus, Kapitus has not alleged an actionable nondischargeability claim under § 523(a)(2)(A). Accordingly, the Court will grant summary judgment against Kapitus's § 523(a)(2)(A) claim.

## B. § 523(a)(2)(B)

Under § 523(a)(2)(B), a debtor may not receive a discharge for debts obtained by the "use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property or services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

10

Kapitus argues that Keith's signature and affirmation of the provisions in the Representations and Acknowledgements page of the Agreement (and related documents) were materially false and induced Kapitus into entering the Agreement. Kapitus argues that when the Agreement was signed, Keith was significantly in arrears to Foxworth. Under the Representations and Acknowledgements, Keith represented via signature that "[n]either my business nor I are in arrears on any business or personal loans." Kapitus argues that Keith's representation in the Agreement that "[n]either my business nor I plan to file for bankruptcy…within the next 12 months" was a material misrepresentation, as Coyote would cease operating within weeks of Kapitus's advance of funds to Coyote and file for bankruptcy within five months of the Agreement.

Keith argues that he was not in arrears with Foxworth when the Agreement was signed. Despite Keith's failure to comply with the terms of his agreement with Foxworth requiring payment to Foxworth within 30 days. Keith asserts that in his course of dealing with Foxworth, Foxworth never considered Keith in arrears if payments were made within 90 days. Def.'s Mot. for Summ. J. at 3. Keith does not offer any more evidence in the summary judgment record to support this claim. There is no evidence of this past practice with Foxworth, nor any testimony from Foxworth representatives supporting this 90-day payment schedule. Moreover, Foxworth's Intent to Lien letter sent on August 24, and the breach of contract suit it filed just over a month later, undermine the statements in Keith's Declaration. It is unclear whether Keith was "in arrears" with his vendors. Accordingly, a genuine issue of material fact remains as to whether Keith's representation in the Agreement was materially false.

The reasonableness of Kapitus's reliance on Keith's statements is also unclear from the record. The Fifth Circuit has set forth three major factors to consider when determining the

11

reasonableness of a creditor's reliance under § 523(a)(2)(B): (i) a creditor's previous business dealings with the debtor which would give rise to a relationship of trust, (ii) any "red flags" that would have alerted an ordinarily prudent lender, and (iii) if "even minimal investigation would have revealed the inaccuracy of the debtor's representations." *Matter of Osborne*, 951 F.3d 691, 698 (5th Cir. 2020) (citing *In re Coston*, 991 F.2d 257, 261 (5th Cir. 1993) (en banc) (per curiam)). The record suggests that Keith was not in direct contact with Kapitus at any stage of the loan application process, as everything was handled through Lendio, the intermediary. Because of Lendio's involvement, and because the record does not contain the financial documents Keith provided to Lendio in support of his application, the reasonableness of Kapitus's reliance on Keith's application is also unclear at this stage of litigation.

Finally, the summary judgment record does not answer whether Keith had an "intent to deceive" under § 523(a)(2)(B). Kapitus is correct that the question of Keith's intent under § 523(a)(2)(B) must be evaluated under the "totality of the circumstances." That evaluation "hinges on the credibility of witnesses," requiring the court to assess the credibility and demeanor of the debtor. *In re Alvarado*, 608 B.R 877, 885 (Bankr. W.D. Okla. 2019). All that appears in the record on this element is Keith's own declaration of his good intent, and Kapitus's circumstantial evidence of his malintent. The Court finds that a genuine issue of material fact remains as to Keith's "intent to deceive" under § 523(a)(2)(B).

Based on the summary judgment record, material questions of fact remain as to this claim, and the Court finds that summary judgment is inappropriate at this stage of the litigation. For these reasons, Keith's motion for summary judgment as to Kapitus's § 523(a)(2)(B) claim is denied.

C. **§ 523(a)(4)**

A debtor cannot receive a discharge for debts incurred "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." For a creditor to succeed in a nondischargeability action under § 523(a)(4), they must show that a fiduciary relationship existed at the time of the fraud or defalcation. ***Matter of Bennett***, 989 F.2d 779, 784 (5th Cir. 1993).

Kapitus claims that it had a fiduciary relationship with Keith, and that he committed fraud or defalcation by failing to honor the terms of the Agreement, and by failing to disclose the outstanding debt he owed to Foxworth when the Agreement was signed.[6] Kapitus offers two theories as to why a fiduciary relationship existed. First, Kapitus argues that under Virginia law the Agreement created a trust relationship because in purchasing Coyote's receivables, Coyote (and by extension, Keith) owed fiduciary duties to Kapitus to ensure continued performance under the Agreement. Alternatively, Kapitus argues that because Coyote was in the "zone of insolvency" at the time of the Agreement, Keith (as a corporate officer) owed fiduciary duties to all of Coyote's creditors, including Kapitus.

The Court need not address whether a factual question precluding summary judgment exists concerning whether Keith committed fraud or defalcation, because the Court finds Keith was not in a fiduciary relationship with Kapitus under § 523(a)(4). To Kapitus's first argument, the scope of the term "fiduciary capacity" is a matter of federal law not state law, although the court should consider state law in the inquiry. ***In re Gupta***, 394 F.3d 349, 349-350 (5th Cir. 2004). Kapitus cites no federal law creating a fiduciary relationship under these circumstances and the Court can find none. Applicable state law could create one. *See **Kahkeshani v. Hann***, Cause 22-

---

[6] Kapitus has abandoned its embezzlement and larceny claims. Pl.'s Response, p. 16 n. 6.

20407, 2023 WL 6803541 (5th Cir. Oct. 16. 2023) (finding for purposes of § 523(a)(4) a fiduciary relationship was created between contractor and homeowner under Tex. Prop. Code § 162.001 et seq., the Texas Construction Trust Fund Act, where a contractor improperly redirected payments, received from the homeowner, which were meant to compensate subcontractors and suppliers for completed work on the homeowner's home). Virginia law, however, does not create a fiduciary relationship under these facts.[7]

Here, the Agreement operated like a loan from Kapitus to Coyote. Unlike **Kahkeshani**, here, the Agreement placed no restrictions on Coyote's use of the loan proceeds for business purposes, such as paying Foxworth. Here, restrictions only existed on Coyote's use of its receivables. If any fiduciary relationship existed under state law, it could have only been as to Coyote's receivables. Kapitus does not complain about Coyote's misuse of its receivables. Kapitus complains about Coyote's use of cash to pay its creditors, but the Agreement anticipated such use.

Kapitus cites **Broaddus** in support of its claim, but that case supports a finding that the relationship between Kapitus and Coyote was a contractual one, not a fiduciary one.[8] **Broaddus v. Gresham**, 26 S.E.2d 33, 36 (Va. 1943) (citing Restatement (First) of Trusts § 12 cmt. G). Kapitus's "purchase price" of $80,000.00 was not itself set aside for a beneficiary but went to pay for operating expenses of Coyote; Coyote had "unrestricted use" of the funds. Kapitus's and Coyote's relationship, despite clever drafting, resembles a debtor-creditor relationship.

---

[7] The Agreement is governed under the laws of Virginia. Def.'s Ex. C at 12.
[8] In *Broaddus*, the court, citing the Restatement of the Law of Trusts, stated, "'If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.'"

As a Georgia bankruptcy court held in a recent case involving Kapitus and a similar contract to the one at hand, "Kapitus and the Debtor were simply parties to a contract and, while the contract imposed obligations on the Debtor's company with respect to repayment of a debt, none of those obligations could be construed as fiduciary in nature." ***Strategic Funding Source, Inc. d/b/a Kapitus v. Dodge (In re Dodge)***, 623 B.R. 663, 668 (N.D. Ga. 2020). This Court agrees with the court in ***Dodge***. Neither Coyote under the Agreement nor Keith under the guaranty owed Kapitus any fiduciary duties. Coyote had to keep an account in which it would deposit a percentage of its receivables until the "loan" had been paid back. Coyote did so. Despite Kapitus's creative drafting, Coyote (and by extension via guaranty, Keith) and Kapitus were in a secured lender-debtor relationship, and not in a trust-beneficiary relationship under § 523(a)(4).

Kapitus's "zone of insolvency" or trust by operation of law argument does not help Kapitus. Courts have long held that "fiduciary capacity" under § 523(a)(4) applies only to trusts existing before the wrongful actions which created the debt. "Fiduciary" is not to be read in its general sense, but is to be construed narrowly, and only applies to technical trusts which pre-exist the wrongful conduct. ***Commonwealth Land Title Co. v. Blaszak (In re Blaszak)***, 397 F.3d 386, 391 (6th Cir. 2005); ***Quaif v. Johnson***, 4 F.3d 950, 953 (11th Cir. 1993). In a case interpreting a similar provision under the Bankruptcy Act, Justice Cardozo held that the debtor "must have been a trustee before the wrong and without reference thereto…'the language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created.'" ***Davis v. Aetna Acceptance Co.***, 293 U.S. 328, 333 (1934) (citing ***Upshur v. Briscoe***, 138 U.S. 378 (1891)). Moreover, courts have generally held that a trust imposed by operation of law (rather than a technical or express trust) does not create a fiduciary relationship under § 523(a)(4). *E.g.*, ***Matter***

15

*of Bennett*, 984 F.2d 779, 784 (5th Cir. 1993); *In re Maddox*, Case No. 22-30493, 2023 WL 3880467, at *6 (Bankr. N.D. Tex. June 7, 2023).

The "zone of insolvency" trust relationship is a quintessential example of a trust which arises only by operation of law. Under the "zone of insolvency" test, officers and directors of a corporation owe expanded fiduciary duties to creditors of the corporation once the corporation is insolvent or enters the "zone of insolvency." *In re Rajabali*, 365 B.R. 702, 708 (Bankr. S.D. Tex. 2007). The "zone of insolvency" fiduciary relationship is "remote from the conventional trust or fiduciary setting, in which someone…in whom confidence is reposed is entrusted with another person's money for safekeeping." *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767 (7th Cir. 2011).

Whether Coyote was insolvent or in the "zone of insolvency" at the time of the Agreement is immaterial under § 523(a)(4). The fiduciary duties that flow from such insolvency do not qualify as a "fiduciary capacity" under § 523(a)(4). On this record, neither Coyote nor Keith were in a fiduciary relationship with Kapitus under § 523(a)(4). Accordingly, Keith's Motion for Summary Judgment is granted as to Kapitus's claim under § 523(a)(4).

### D.  § 523(a)(6)

Under § 523(a)(6), a debtor cannot discharge debts that result from "willful and malicious injury…to another entity or to the property of another entity." The leading Supreme Court case for this subsection, *Kawaauhau v. Geiger*, held that nondischargeability requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." 523 U.S. 57, 61 (1998). Nondischargeability requires an actor to "intend 'the consequences of an act,' not simply 'the act itself,'" mirroring the definition of an intentional tort. *Id.* at 61-62. Simple breaches of

contract, even if intentional, do not cause injuries which may be exception from discharge, unless accompanied by willful and malicious tortious conduct. *Id.* at 62; ***Williams v. Int'l Brotherhood of Electrical Workers Local 520***, 337 F.3d 504, 509 (5th Cir. 2003).

The summary judgment evidence does not suggest Coyote's (and by guaranty, Keith's) debt to Kapitus was the product of willful and malicious injury. Coyote paid its suppliers, not itself or insiders, with the money it received from Kapitus. Kapitus would have this Court, viewing evidence in a light most favorable to Kapitus, infer a willful and malicious financial tort against Kapitus based only on the short time (two weeks) separating Coyote's entry into the Agreement and the shutting down of Coyote's bank accounts. While this Court recognizes that debtors rarely, if ever, admit to malintent and malintent must be inferred from other facts in the record, the timing of closing of the debtor's accounts alone, without more, is a bridge too far. The unfortunate timing could result from many causes. The summary judgment record lacks any other evidence suggesting Keith acted in a willful and malicious manner in the formation of the Agreement, even viewing it in a light most favorable to the non-movant Kapitus. In fact, the evidence provides a plausible explanation for the quick shut down of the accounts: Keith could not keep his struggling construction business afloat due to a key supplier seeking to lien Coyote's bank accounts, causing Coyote to breach its agreement with Kapitus.

***In re Sligh*** and ***In re Gamble-Ledbetter*** do not apply. While it is true that financial injury can qualify under § 523(a)(6), the conduct of the debtor must be willful and malicious, typically rising to the level of tortious conduct. ***Sligh*** involved an "extortionate scheme" conducted by the debtor, who was engaging in threats and blackmail. ***Fator v. Sligh (In re Sligh)***, Case No. 21-03052, 2022 WL 1101537 (Bankr. N.D. Tex, Apr. 12, 2022). ***Gamble-Ledbetter*** involved an

17

accountant-debtor who embezzled nearly $1 million from a customer, with a "planned, controlled exercise of dominion and control over another's money perpetrated over a series of years which funded a lifestyle for the [debtor] and her family that they could not otherwise have afforded." ***In re Gamble-Ledbetter***, 419 B.R. 682, 699 (Bankr. E.D. Tex. 2009). Neither apply on this record. Viewing the record in the light most favorable to Kapitus, Keith's actions do not constitute "willful and malicious" behavior. Accordingly, Keith's Motion for Summary Judgment on Kapitus's § 523(a)(6) claim is granted.

## VI. CONCLUSION

Thus, the Court grants the Motion in part. Keith has met his burden to show that no disputed issues of material fact remain and that he is entitled entry of judgment in his favor on Kapitus's claims under §§ 523(a)(2)(A), (a)(4), and (a)(6). For Kapitus's § 523(a)(2)(B) claim however, material issues of fact remain, and Keith is not entitled to judgment as a matter of law. An order granting the Motion in part will be entered separately.

# # #